The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you very much. Please be seated and good morning to all of you. We're ready for argument this morning. The first argument is Hartsock v. Goodyear Dunlop Tires. Mr. Getchell, when you're ready. May it please the Court, Duncan Getchell for the defendants below. We are here on a question certified by the District Court and accepted for interlocutory review by this Court to determine whether the South Carolina Law of Privilege or the Federal Common Law governs whether or on what terms the butyl content of the interliner and the global design manual sought in discovery below should be discoverable in diversity. Plaintiff agrees that this is the issue, stating, quote, the single issue before the Court in this interlocutory appeal is the legal standard to be applied in determining when and under what conditions it will order trade secrets. We know what the argument is about. What's your argument on that point? Yes, sir. Well, I maintain that the answer to the certified question is provided by a straightforward application of Federal Rules of Evidence 501. That rule, of course, provides the common law as interpreted by the United States courts in light of reason and experience, governs a claim of privilege with stated exceptions. Doesn't that suppose there is a privilege?  Yes, sir. It certainly does. So it's not just answered by that, but it's answered by that in conjunction with the fact that what you assert is a privilege. Yes, sir. And I assert that whether or not it's a privilege should not be very controversial. For example, by the way, the other side would agree with you on that point. But in a different way. Correct. If you look, for example, in the matter of anonymous member of the South Carolina Bar, at Note 8, the Supreme Court of South Carolina lists the recognized privileges in South Carolina, and it includes protection for trade secrets in that list. The South Carolina Trade Secrets Act, after it was amended in 1997, clearly provides enhanced protection for trade secrets. And this Court, as long ago as 1963, in Krizak v. W.C. Brooks and Sons, recognized that the definition of a privilege is functional. It doesn't matter whether the word privilege is used. And so we maintain that when there are limitations on the production or introduction of any information, that that constitutes a privilege. Well, Mr. Goetzel, let me tell you the problem I'm currently having with your argument, and perhaps you can explain why it isn't an issue. The Rule 26C of the South Carolina rules mirrors the federal rule and was a big part of the Lafitte decision in front of the Supreme Court of South Carolina. And Rule 26C talks about, for good cause shown, the court may order protection of a trade secret. Now, if the South Carolina rule mirrors the federal rule, how can there be an existence of a substantive trade secret? Why would South Carolina have adopted a rule of procedure that mirrors the federal rule requiring good cause shown? South Carolina had adopted its Rule 26C before the 1997 amendment of the South Carolina Trade Secrets Act. Right. But it's still in effect. And that created an issue for the Supreme Court of South Carolina because constitutionally in South Carolina the legislature is not supposed to be able to change rules of court. And so the South Carolina Supreme Court went out of its way to say that the 1997 amendment complemented rather than set aside the Rule 26 provisions. And it clearly contemplated that it complemented them in a way that made it the burden of the discovering party to demonstrate strict necessity. Well, but in Lafitte, which was 2009, the South Carolina Supreme Court said, we hold that the balancing test associated with discovery of trade secret information under Rule 26C governs the discovery of trade secret information in this matter. So it's not talking about it as a substantive privilege. It's talking about it as information subject to Rule 26C, which mirrors the federal rule. You know, we cited BBA nonwovens Simpsonville versus superior nonwovens from the federal circuit, where the federal circuit recognized, quote, the 1997 enactment of the South Carolina Trade Secret Act sought to expand trade secret protection and to implement other pro-business changes to the statute to make the state more attractive to businesses in the manufacturing and technology areas. So not only has the sister circuit recognized that, but we have cited considerable commentary written by commentators on the South Carolina law, all of whom say that an enhanced privilege was intended and created in 1997. Well, that's a little interesting, isn't it? Because this is a tort claim, a transitory tort claim arising under South Carolina law, just because there happened to be a tire in the state. How would that further the attraction of business to South Carolina? Well, the fact – In other words, I don't dispute the proposition you just presented to us, but I'm not sure how it applies in our analysis of the issue in this case. Well, if, for example, I were Michelin and I wanted to move to South Carolina, as Michelin did, then I presume that I would have some comfort from the fact that whatever trade secrets I have lodged in South Carolina. Yeah, but you're never going to be able to keep your tires out of South Carolina. No. South Carolina drivers like a good tire every bit as much as any other state driver. We like better tires. Well, the fact of the matter is we have to work the South Carolina Trade Secrets Act together with 501. And in 501, Congress predetermined that where you have a diversity case, and in a lot, a lot of states, where the accident is going to occur is going to be the choice of law rule as it was here. So can I ask you this? Assuming for the sake of discussion that it's a privilege, what's the difference on this record? Well, the difference on this record is very, very significant because under Coca-Cola, the balancing test works in a way that generally resolves itself, that production will be required under a protective order. The federal system creates almost a presumption of discoverability, although we have cited lots of Coca-Cola standard cases where skim stock and this kind of formula was not produced even under the federal standard. But here, we've got a rule that says... We've got a rule that says... But effectively, what's the practical difference? The court, if we were to send it back, if we were to say this is a privilege district court, now, make your determination, is it really going to make any difference? Well, we believe it. How would it make a difference exactly? The court would have to say, I now acknowledge it's a privilege, and now I'll look at what should be done and how we balance it under the law, and they would come up with some kind of confidentiality on the order or whatever, and likely would still order it produced. I don't accept that, Your Honor. I don't mean to be aggressive. I didn't think you would, but I think it may be closer to the truth than what you want to accept. Maybe. Let me say this. First, as a matter of law. Well, let me just say this. What in the status of privilege makes you think the result would be any different? I can tell you exactly what I think. I wish you would. What I think is that under the requirement of strict necessity recognized in Lafitte, that in Lafitte, the experts filed affidavits saying why they needed it, why they wanted it, why it would be useful, why it would be helpful. You don't think the experts can do that here? No, they didn't. Because here's what they speculated. I know that, but if it were to go back, and now the district court understands. I don't think they could. Let me finish. Dealing with privilege, you don't think that the experts, if they have it in them, they can't produce an affidavit or testimony to assert that? No, sir. And here's why. What was wrong with the affidavits of the experts in Lafitte was that they said. And by the way, let me say this. And the district court will decide whether or not that showing has been made correct? That is correct. If you remand it without any, I mean, you could remand it with instructions, but if you just remand it. And I'll point out that in Tatum v. RJR Pension Committee, this court in 2014, of course, recognized. Why don't you just do this to help me? It will help me. Tell me your strongest argument that if it is a privilege, what's your strongest argument for me to believe under the law that you necessarily win? My strongest argument. Right. Is that the experts want the formula because they think it might show less than 100% butyl. And they want the manual because they think it might show. Let me stop you and say this. There was some discussion about sealing the courtroom. We didn't seal the courtroom. But we don't plan for any of our questions to lead to any kind of revealing any information. So if you feel like we've asked you a question, I just want to make that point. Just let us know either side. We don't need to get into that and we don't plan to get into that. Go ahead. Yes, sir. I wasn't going to. Okay. I'm not going to cite any. I didn't say you were, but I should have done that to start. Thank you, sir. Here's the problem the other side has. They think that the butyl content may be less than 100%. And Carlson believes that if it's less than 100%, he would opine. You just sound like you're making one side of an argument that you would make to the district court. I said, do you think this is the compelling reason that you win if it is a privilege? Yes, I believe it makes a difference. I mean, the district court certified this question on the belief that the standard made a difference. That's why he certified it, and that's why this court accepted the certification, that it makes a difference. And, of course, as a team. It may make a difference to the analysis. Doesn't it mean it necessarily makes a difference to the result? Well, let's start with the proposition in Tatum that I was going to refer to. Because I was a district court judge at one point. I know. As was Judge Davidson. Sometimes the parties would, I was pretty sure I was right, but they really weren't certified, and I could see how maybe people might disagree. And so you would certify a question to the court. As a matter of fact, I note that when you were a district court judge, you correctly applied the interface between 501 and the state law of privilege. Thank you very much. And as a matter of law, I thought I had it right. I'm not sure who else thought I had it right, but I thank you for saying that. I was going to say, I've dealt with the privilege question before as a district judge. But as a matter of law, using the wrong legal standard to do the analysis is reversible error per se. I know that. That's just a statement of the law, though. But if you applied, the question is, if we were to go back and it, if we were to send it back and say this is a privilege, and I do the correct legal analysis, I'm asking you, tell me your argument that you have to win. This all goes back, quite frankly, to Judge Davidson's question. Why is it that you have to win? Maybe you understand my question. You could go back and you could go to the analysis and the judge could go, it is a privilege. The four circuits told me it's a privilege. Now I will consider it as a privilege. You could still lose. I could still lose. But I ought to have the chance to win under the right legal standard. And I got all that, but I was asking you the strongest argument on why you do win in answer to the question, what difference does it make? And the strongest argument to me is the way I read Lafitte, saying I think I might be helped by finding out this information, even though I have another theory of defect I can go forward with, is not enough. That's why I expect to win on remand. If there are no further questions, I'll wait. You've reserved some time. Yes, sir. Thank you very much. Thank you. Mr. Tannenbaum. May it please the Court. This is not a privilege under South Carolina law. Not only does the statute make that clear, but the South Carolina Supreme Court made it clear. You don't think it matters if it is a privilege, do you? You think the analysis is the same, don't you? Yes, sir. And the Supreme Court has said that. The South Carolina Supreme Court has said that. You apply Rule 26, Balancing Act. Should we certify the question to the Supreme Court of South Carolina just to get it resolved once and forever? If I could, I think if you look at both the Act and the way the South Carolina Supreme Court has interpreted it and written about it, the South Carolina Supreme Court uses the term privilege one time, one time in its opinion. And it's in footnote 11 where it refers to a Texas case because Texas had codified the Trade Secrets Act as a privilege. That is the only time the South Carolina Supreme Court uses the term. It never cites Rule 501. It doesn't even include any of them. But the Supreme Court also notes that the last time the Federal Court traipsed into the Trade Secrets Act, the Federal Court's got it wrong. Didn't the Court say that? I would never speak ill of a Court. I'm not asking you to say it. I'm just saying that's what they said. Yes, sir. Yes. But we'll tell them that you said they spoke ill of it. But really, that's why, you know, the Grico case limited it. And Peconis, Justice Peconis, said no, no, that's not right. And if I could, I think it's clear that when you look at the Act itself, and may I just diverse, take a look at 39860C, and it clearly distinguishes between trade secret information and a privilege. If I could just publish it. Direct access to computer databases containing trade secret information shall not be ordered by the Court unless the Court finds that the proponent of the discovery cannot obtain this information by any other means and provided that the information, trade secret information, is not subject to any privilege. Let me ask this. But if you're certain about it, what's wrong with certifying this to get it straight? You know, if we answer the question, there's a pretty good chance we'll get it right. But if they answer the question, it's guaranteed they get it right because they have the final word on it. And you don't think it will be any problem for you because you're sure. You're just going to read them their own case and tell them you already decided. And you may be right, but then they would settle the question, as Judge Davis indicates. What about that? This case has been pending now for over three years, I'm just saying. But in reality, this Court, as other Federal circuit courts, and as the district courts throughout this circuit, have always applied the balance, Rule 26 balance, the same thing that the South Carolina Supreme Court said needed to be decided. Would you be comfortable if we said it is a privilege and send it back for analysis as a privilege? Your Honor, I would not because I don't believe it is a privilege. And I've got to certainly your view. Would it make any difference to you, do you think, based on your argument that the standards are the same? No, sir. You think the result would be the same? I think the result would be the same, but without any further hearing, because we have shown necessity in a particularized way that the experts in the Lafitte case did not show. And I can point the Court, without going into sealed portions of the record, where that is found in the record through joint appendix sites. But in that case ---- But in fact, if this Court were to decide or if the Supreme Court of South Carolina were to decide there is a privilege involved, then the analysis you're discussing and pointing out the record, that would be left up to the district court. Yes, sir. For you to have some kind of hearing. You could go in the record, Your Honor, so-and-so page, we have this, so here's an affidavit. Yes. It would just be, I hear you saying you'd like to avoid another hearing and get on with the case, but you're comfortable no matter what we say or what the Supreme Court says, because all we're deciding here is whether or not it's a privilege. Yes, sir. We're not deciding anything on the merits or whether or not it's discoverable or has to be protected. Correct. You think it gets to the same point. Yes, sir. You think that. Yes, sir. Except let me also add, you also would rather put all that to bed right now and move on with it. Do you think if we were to do something differently, you're going to get to the same spot anyway? I'm going to get to the same spot anyway, and it's going to be another year. More likely than not, we will. Do you think the district judge will be that slow? No, sir. I think we'll get it decided, but it may end up right back here again for- What do we do to avoid that? Rule my way. I don't know if that will do it. But I think that our argument is clear on this as well. If you look at the plain wording of the statute and the South Carolina Supreme Court's opportunity to read Rule 501 into the Trade Secrets Act and call it a privilege, it would have done so. It would have said, this is the analysis. In fact, it turned to Rule 26. It said it complemented it. It used the same relevant and necessary arguments, the two prongs, and we ended up where we did. I think we win, like the lower court thinks, because we have shown a necessity. Not only is it relevant, but a necessity. Anything else for me? Thank you very much. Thank you very much, Your Honor. You rest on your brief. Thank you. Thank you very much. Mr. Gadsden? Yes, sir. I want to emphasize that, again, the anonymous member, footnote 8, the Supreme Court of South Carolina in that case said, we're not recognizing any new privileges unless they're established by the legislature. And they went through and they listed the existing privileges, and protection for trade secrets was one of them. What if any consideration was given either by the magistrate judge or the district judge, on or off the record, about certifying this question to the Supreme Court? I detect no discussion of that. Okay. Also, I want to point out that in the definitions of privileges in the Fourth Circuit, that as recently as 2013, in United States v. Sterling, the court said protection for trade secrets is among the, quote, enumerated privileges that were thought. Let me ask you this. On the question of certification, you know, you mentioned something about a plant wanting to go into South Carolina and what they would do under trade secrets. If we got the State of South Carolina to tell us what the law is in South Carolina, wouldn't that then allow all those people who might want to go to South Carolina, for whatever reason, to either they would certainly know what the law is, and if they didn't like the law, then it would be clear to them what the law is in South Carolina, and they could take steps to change the law? It seems to me that sounds like that's not a terrible approach for the body politic to, first judicially, to let the court that has the final word have the final word, rather than us somewhat speculating on it. I know it's not quite that extrapolation at all. And then let that be decided, and then everybody knows what that act says, and then if people like it, they can applaud it, and if they don't like it, they can do things to change it. I'm fully supportive of certification if this court is in doubt as to whether or not it's established South Carolina law. I think that is correct. I also would like to respond to Judge Davis about how South Carolina thinks its law is going to apply, given the fact that there are 49 other states. In the 1997 amendments to the South Carolina Trade Secret Act, there is a provision that says this section applies to any civil action brought within or without the state where discovery is sought of trade secret information present in this state. So there is an assertion of authority over the trade secrets that Michelin might bring into the state. And so that is a clear statement, I think, of the policy of the state. I believe that whether or not a trade secret is a privilege is clearly established in South Carolina law and in the law of the Fourth Circuit. But if there's any doubt whatsoever, I do agree that it should be certified. Okay. Thank you very much. Thank you very much. We'll step down and agree counsel and go directly to the next argument.
judges: Dennis W. Shedd, Barbara Milano Keenan, Andre M. Davis